**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DORIS WATSON,                                    :

      Plaintiff,                              :

vs.                                              :          CA 11-0292-C

MICHAEL J. ASTRUE,                               :
Commissioner of Social Security,

                                 :

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the March 14, 2012 hearing before the

Magistrate Judge, it is determined that the Commissioner's decision denying plaintiff

benefits should be affirmed.[1]

Plaintiff alleges disability due to coronary artery disease and hypertension. The

Administrative Law Judge (ALJ) made the following relevant findings:

> The claimant's severe physical impairments are coronary artery disease and hypertension. The claimant's physical residual functional capacity is: lifting/carrying of 10 pounds occasionally and 5 pounds frequently; sitting and standing for 6 hours each in an 8 hour day; no exposure to dust, fumes, and gases or temperature extremes; no dangerous heights or machinery; and no operation of foot controls or the pushing and pulling of arm controls. These limitations accommodate, inter alia, the claimant's occasional mild to moderate pains, headaches, and fatigue. The claimant denied having any medication side effects in Exhibit 2E at 7.

> The residual functional capacity is supported, inter alia, by the objective findings set out in the Stanton Road Clinic office notes indicating consistently that claimant's hypertension and coronary artery disease are controlled with medication and exercise regimen; by the absence of disabling complaints in Exhibits 3F and 6F; by the absence of disabling coronary artery disease symptoms for the duration period and the observations at Exhibit 5F at 1-2, 4 (no return needed for 6 months), 9 (quite well), 12, 13; by the observations in Exhibit 9F at 1 (doing well in September of 2008); by the University of South Alabama Hospital records in Exhibit 10F at 1 (condition stable with negative testing); by the information in Exhibit 12 at 2 (merely follow up in 6 months) and 12F at 6 (claimant denies having any problems) and 12F at 12 (no renal artery stenosis); by the results of testing including METS at 10.2 and normal stress test; by the heart rating of Class I by Dr. Stephen Landreneau; and by the claimant's activities of daily living which include driving a car, shopping, cooking, and light housework. The residual functional capacity is further supported by the conservative treatment received; by the

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 22 & 23 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

medical findings arising from medically acceptable clinical and laboratory diagnostic techniques; and by the absence of recent hospital admissions.

In arriving at the residual functional capacity, I have also considered the claimant's subjective complaints. I have ascertained that there are underlying medical conditions that could cause some symptoms, but that the objective medical evidence does not confirm the degree of limitation alleged to be arising from those conditions. I have also determined that the objectively determined medical conditions are not of such severity that they can be reasonably expected to give rise to the alleged symptoms. ***The claimant's credibility on the severity of her symptoms has been undermined by the factors identified above that support her residual functional capacity***.

The assessment form prepared by Dr. Landreneau is given considerable weight. Its (sic) opinion that the claimant warrants a mere Class I rating and that the degree of limitation associated with her condition was slight to moderate is consistent with the record as a whole; the simultaneous opinion that the claimant's fatigue would be distracting to adequate performance of work has been accommodated with the extraordinary reduction of her residual functional capacity to a mere range of sedentary work that also precludes the repetitive use of arm or foot controls. It is also read in the context of the opinion that her limitation is slight to moderate. The indication that the claimant would need to nap one hour a day several times a week does not require that it be done during work hours or that it could not be accommodated during the worker's lunch hour or permitted breaks. It again must be read as part of the overall opinion that the limitation involved is consistent with a Class I classification. Moreover, there is no discussion of the need for a nap in any office note of Dr. Landreneau or any other physician who examined her. See e.g. Exhibits 5F at 1-2, 4, 9, 12, 13; 12F at 2, 6, 12; 9F at 1; and 13F at 3.

I find that the claimant can return to her past relevant work as a payroll clerk, as that work is performed in the national economy. The Dictionary of Occupational Titles [] at # 215.382-014 describes how that job is performed. It is sedentary, semi-skilled job that requires frequent reaching, handling, fingering, occasional hearing and accommodation, and constant near acuity, and moderate noise intensity. All of these functions are within her residual functional capacity.

The claimant is not disabled.

.       .       .

**1.      The claimant meets the insured status requirements of the Act through September 30, 2007.**

**2.      The claimant has not engaged in SGA since October 24, 2003, the alleged onset date.**

**3.      The claimant has the following severe impairments: coronary artery disease and hypertension.**

**4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.**

.      .      .

**5.      The claimant has the residual functional capacity to occasionally lift 10 pounds and frequently lift 5 pounds; to sit for 6 hours in an 8 hour work day; to stand for 2 hours in an 8 hour work day. She cannot be exposed to dangerous heights, dangerous machinery, and temperature extremes; she can be exposed occasionally to dust, fumes, and gases; she cannot be engaged in the operation of foot controls or the pushing and pulling of arm controls.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this

purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

.     .     .

The claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

The claimant's pain complaints were considered in formulating her residual functional capacity.

**6.     The claimant capable of performing her past relevant work as a payroll clerk. This work does not require her performance of work-related activities precluded by the claimant's residual functional capacity.**

The claimant has past relevant work as a payroll clerk. See e.g. Exhibit 9E at 3. That work was performed on a full time basis 5 days per week and 8 hours per day. As performed in the national economy, it is a sedentary, semi-skilled occupation that requires frequent reaching, handling, fingering, occasional hearing and accommodation, and constant near acuity, and moderate noise intensity. Its description is found at DOT # 215.382-014. The claimant's residual functional capacity would permit her to perform that work again. The claimant's reduction to the sedentary exertional level does reflect her occasional mild to moderate pain that can be expected to exist with her condition.

**7.     The claimant has not been disabled from October 24, 2003 through the date of this decision.**

(Tr. 21-22, 22, 22-23, & 25-26 (some emphasis supplied).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a payroll clerk, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

---

[2]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

In this case, the plaintiff contends that the ALJ's RFC opinion is not supported by substantial evidence and, as well, that his credibility finding is not supported by substantial evidence.

A.   __RFC Determination__.  The ALJ determined that plaintiff has the residual functional capacity "**to occasionally lift 10 pounds and frequently lift 5 pounds; to sit for 6 hours in an 8 hour work day; [and] to stand for 2 hours in an 8 hour work day**." (Tr. 22; *see also* Tr. 21.) This determination, as plaintiff notes, is all but consistent with the ability to perform sedentary work. *Compare id. with* 20 C.F.R. § 404.1567(a) (2011) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

Plaintiff contends that in reaching his RFC determination, the ALJ mischaracterized the opinion of her treating source, Dr. Stephen Landreneau, set forth in a heart questionnaire completed by the doctor on April 28, 2008. (*See* Tr. 327-328.) That questionnaire reflects the following opinions of Dr. Landreneau regarding the nature of plaintiff's coronary artery disease and hypertension, the limitations imposed by her heart condition, and the impact of Watson's subjective complaints of fatigue: (1) she has a New York Heart Association Class I heart condition; (2) her condition causes a slight to moderate degree of limitation on her ability to perform work activity; (3) he had no opinion on whether plaintiff could maintain work activity for an eight hour

7

workday; (4) her condition would not require her to elevate her legs during the day;
and (5) with respect to fatigue, he indicated that fatigue is present to such an extent as
to be distracting to adequate performance of daily activities or work, that physical
activity such as standing and walking will produce some increase in the level of fatigue
but not to such an extent as to prevent adequate functioning, and plaintiff's fatigue
forces her to recline or nap one hour a day several days per week. (*See id.*)  The ALJ
assigned considerable weight to Landreneau's assessment (Tr. 21) and analyzed it in the
following manner:

> [Landreneau's] opinion that the claimant warrants a mere Class I rating
> and that the degree of limitation associated with her condition was slight
> to moderate is consistent with the record as a whole; the simultaneous
> opinion that the claimant's fatigue would be distracting to adequate
> performance of work has been accommodated with the extraordinary
> reduction of her residual functional capacity to a mere range of sedentary
> work that also precludes the repetitive use of arm or foot controls. It is
> also read in the context of the opinion that her limitation is slight to
> moderate. The indication that the claimant would need to nap one hour a
> day several times a week does not require that it be done during work
> hours or that it could not be accommodated during the worker's lunch
> hour or permitted breaks. It again must be read as part of the overall
> opinion that the limitation involved is consistent with a Class I
> classification. Moreover, there is no discussion of the need for a nap in any
> office note of Dr. Landreneau or any other physician who examined her.

(*Id.*) The problem plaintiff has with this analysis is the ALJ's statement that "the
simultaneous opinion that the claimant's fatigue would be distracting to adequate
performance of work has been accommodated with the extraordinary reduction of her
residual functional capacity to a mere range of sedentary work that also precludes the
repetitive use of arm or foot controls." (*Compare id. with* Doc. 14, at 3-6.)  Plaintiff
contends that with this one sweep of the pen, the ALJ has wrongly "equated"

Landreneau's opinion regarding her fatigue with the ability to perform sedentary work or, otherwise, that the ALJ did not properly accord Landreneau's opinion the considerable weight it was due. (*See id.*)

While the Court agrees with plaintiff that the ALJ's opinion appears to "equate" Landreneau's finding that plaintiff's fatigue is present to such an extent as to be distracting to adequate performance of daily activities or work with her ability to perform sedentary work, any error in this regard is harmless given that substantial evidence in the record, including most of Landreneau's heart questionnaire, supports the ALJ's determination that plaintiff retains the residual functional capacity to occasionally lift 10 pounds and frequently lift 5 pounds, sit for 6 hours in an 8 hour workday, and stand for 2 hours in an 8 hour workday. Indeed, it would have been appropriate for the ALJ to give no weight to this particular fatigue observation made by Landreneau both because it is internally inconsistent with the other findings made by Landreneau and because it is inconsistent with the other evidence of record produced during this time period.[3] More to the point, Landreneau's finding that plaintiff's fatigue

---

[3]     Landreneau's April 28, 2008 office notes do not contain evidence that plaintiff complained of fatigue (*see* Tr. 331) nor are there many office notes from 2008 or early 2009 which contain reference to plaintiff's complaints of fatigue (*see, e.g.,* Tr. 329-330, 368-369, 371-374 & 411-417). Indeed, there are just as many office notes from this time period in which plaintiff reported that she was doing well (*see* Tr. 303 & 334-335).

During the hearing on March 14, 2012, counsel for plaintiff noted that fatigue is mentioned throughout the medical records on pages 240-271 of the administrative record. The undersigned would simply note that such complaints of fatigue by plaintiff prior to the placement of stents in October of 2005 would not be unusual and the medical records reflected on pages 240-271 of the administrative record produced in this case fall within that time period. (*See* Tr. 240-271.)

is present to such an extent as to be distracting to adequate performance of daily activities or work is inconsistent not only with his additional fatigue finding that physical activity such as standing and walking will produce some increase in the level of fatigue but not to such an extent as to prevent adequate functioning but, as well, it is inconsistent with the additional questionnaire findings that plaintiff has a New York Heart Association Class I heart condition which causes a slight to moderate degree of limitation on her ability to perform work activity. The undersigned surmises that the ALJ read Landreneau's questionnaire in the manner he did in order to make as much sense out of it given the state of the other medical evidence of record, none of which indicates plaintiff can perform no work activity given her subjective complaints of fatigue (*see* Tr. 277-326, 329-336, 369-384, 411-417 & 428-431), and his undoubted knowledge that a New York Heart Association Functional Class I "describes a patient who, despite the presence of cardiac disease, does not exhibit any resulting physical limitations, because exertion does not cause abnormal fatigue, palpitations, anginal pain or shortness of breath." *Mejia v. Astrue,* 719 F.Supp.2d 328, 331 n.5 (S.D.N.Y. 2010), citing American Medical Association, *Guides to the Evaluation of Permanent Impairment* at 170; *see also Bartlett v. Astrue*, 2010 WL 4386893, *3 n. 7 (D. Minn. Oct. 7, 2010) ("Class I indicates no limitation of physical activity and no shortness of breath, fatigue, or heart palpitations with ordinary physical activity."), *report & recommendation adopted*, 2010 WL 4386891 (D. Minn. Oct. 28, 2010); *Ray v. Sun Life & Health Ins. Co.,* 752 F.Supp.2d 1229, 1236 (N.D. Ala. 2010) ("The American Heart Association's website . . . describes NYHA Class I as 'No symptoms and no limitation in ordinary physical activity.'"), *aff'd,* 443

10

Fed.Appx. 529 (11th Cir. Oct. 21, 2011). Regardless of the reason for the ALJ's analysis of Landreneau's one fatigue finding, the bottom line for this Court is that the ALJ could properly ignore that finding for the reasons identified above and, moreover, could properly concluded that the evidence of record supports a finding that plaintiff has the residual functional capacity set forth in the decision denying benefits. Not only does Landreneau's assessment, on balance, support the ALJ's RFC determination (*compare* Tr. 327-328 *with* Tr. 21 & 22) but, as well, the ALJ's RFC determination is supported by the claimant's reported daily activities (*see* Tr. 39), and most of the remaining evidence of record (*see, e.g.*, Tr. 277-314, 317-326, 329-336, 369-384, 413-417 & 428-431). In particular, no physician who examined and treated plaintiff indicated that she was incapable of work activity because of her heart condition nor did any physician place any limitation upon her ability to perform any physical activity, like lifting or carrying of weight, sitting, standing or walking. (*See id*.)[4] Accordingly, plaintiff is entitled to no relief on the basis of this claim.

     **B.**    **Credibility Determination**.  Plaintiff's only other assignment of error is that the ALJ's credibility determination is not supported by substantial evidence. In particular, plaintiff faults the ALJ for failing to find credible her testimony that she cannot work due to her extreme fatigue, same requiring her (by noon) to nap 2 to 3 hours per day. (*See* Tr. 36-39.)

---

       [4]     Indeed, the last medical office notes made a part of this record simply contain the notation that plaintiff "does not work at this time." (Tr. 428.)

The Eleventh Circuit has established a three-part pain standard that applies when a claimant attempts to establish her disability through testimony of pain or other symptoms. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). "A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.  20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the undersigned disagrees with plaintiff's contention that the ALJ committed reversible error in failing to find her fatigue complaints credible. The ALJ, in applying the Eleventh Circuit's "pain" standard, clearly stated that "[t]he claimant's credibility on the severity of her symptoms has been undermined by the factors identified above that support her residual functional capacity." (Tr. 21; *see also id.* ("In arriving at the residual functional capacity, I have also considered the claimant's subjective complaints. I have ascertained that there are underlying medical conditions that could cause some symptoms, but that the objective medical evidence does not

confirm the degree of limitation alleged to be arising from those conditions. I have also determined that the objectively determined medical conditions are not of such severity that they can be reasonably expected to give rise to the alleged symptoms.").) In turn, those factors were:

> The residual functional capacity is supported, inter alia, by the objective findings set out in the Stanton Road Clinic office notes indicating consistently that claimant's hypertension and coronary artery disease are controlled with medication and exercise regimen; by the absence of disabling complaints in Exhibits 3F and 6F; by the absence of disabling coronary artery disease symptoms for the duration period and the observations at Exhibit 5F at 1-2, 4 (no return needed for 6 months), 9 (quite well), 12, 13; by the observations in Exhibit 9F at 1 (doing well in September of 2008); by the University of South Alabama Hospital records in Exhibit 10F at 1 (condition stable with negative testing); by the information in Exhibit 12 at 2 (merely follow up in 6 months) and 12F at 6 (claimant denies having any problems) and 12F at 12 (no renal artery stenosis); by the results of testing including METS at 10.2 and normal stress test; by the heart rating of Class I by Dr. Stephen Landreneau; and by the claimant's activities of daily living which include driving a car, shopping, cooking, and light housework. The residual functional capacity is further supported by the conservative treatment received; by the medical findings arising from medically acceptable clinical and laboratory diagnostic techniques; and by the absence of recent hospital admissions.

(*Id*.) The Court agrees with the ALJ that the foregoing factors undermine the credibility of Watson's allegations that she suffers from such extreme fatigue that by noon each day she is napping for 2 to 3 hours. In particular, plaintiff's testimony in this regard is at odds with Dr. Landreneau's description of her heart condition as a New York Heart Association Functional Class I impairment (Tr. 327), the scope of her daily activities (Tr. 39), the very few complaints of fatigue registered with the various physicians she saw between the placement of her stents and the date of the hearing (*see* Tr. 276-335, 368-374,

380-383, 411-417 & 428-431), and the failure of any physician who examined or treated her to indicate that she is incapable of any and all work activity.

In light of the foregoing, the undersigned finds that the ALJ did not commit reversible error based upon the issues identified by the plaintiff and because Watson's past work as a payroll clerk is consistent with the residual functional capacity found by the ALJ (*compare* Tr. 26 ("As performed in the national economy, [work as a payroll clerk] is a sedentary, semi-skilled occupation that requires frequent reaching, handling, fingering, occasional hearing and accommodation, and constant near acuity, and moderate noise intensity. Its description is found at DOT # 215.382.014.") *with* Tr. 22 ("**The claimant has the residual functional capacity to occasionally lift 10 pounds and frequently lift 5 pounds; to sit for 6 hours in an 8 hour work day; to stand for 2 hours in an 8 hour work day. She cannot be exposed to dangerous heights, dangerous machinery, and temperature extremes; she can be exposed occasionally to dust, fumes, and gases; she cannot be engaged in the operation of foot controls or the pushing and pulling of arm controls.**")), the Commissioner's fourth-step denial of benefits is due to be affirmed.  *See, e.g., Waldrop v. Commissioner of Social Security*, 379 Fed.Appx. 948, 953 (11th Cir. May 21, 2010) ("The burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy.").

## <u>CONCLUSION</u>

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

14

**DONE** and **ORDERED** this the 19th day of March, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**